Lea DUNCAN, Plaintiff-Appellant,

v.

Jack DUCKWORTH, Warden, and Ronald Freake, Hospital Administrator, Defendants-Appellees.

No. 79–2395.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 13, 1981.[*]

Decided March 13, 1981.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument."  See Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f).  No such statement having been filed, the appeal has been submitted on the briefs and record.

Lea Duncan, pro se.

Bruce L. Kamplain, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, WOOD and CUDAHY, Circuit Judges.

FAIRCHILD, Chief Judge.

Plaintiff-appellant, Lea Duncan, appeals from the dismissal of his *pro se* civil rights action seeking damages for the alleged cruel and unusual punishment he suffered as an inmate at Indiana State Prison. The defendants named in his suit are Jack Duckworth, the warden of the prison, and Ronald Freake, the prison hospital administrator. For the reasons that follow, we affirm the judgment of the district court as to Duckworth, but reverse as to Freake.

I

Duncan filed his complaint on May 7, 1979. He alleges therein that on January 23, 1977, he fell and injured his wrist while playing basketball in the prison gymnasium. He was taken to the prison hospital where his wrist was X-rayed, and he was given two Extra-Strength Tylenols for pain and released. His wrist was again X-rayed on November 18, 1977, after he "went on Sick Call," complaining of severe pain. The X-ray revealed that his wrist was fractured. On December 12, 1977, when Duncan again "went on Sick Call" complaining of pain, he was scheduled for surgery. On March 10, 1978, and again on March 27, 1978, Duncan continued to complain of pain in his wrist and was informed the surgery would be scheduled. Finally, on November 30, 1978, a bone graft was performed on his wrist. Duncan alleges that he suffered extreme pain during the twenty-two months before surgery was performed. He claims that the suffering caused him by this delay constitutes cruel and unusual punishment.

In granting the defendants' motion to dismiss, the district court did not rule that Duncan had failed to state any claim whatsoever. On the contrary, based on the facts alleged, the court stated, "a case may be made for some sort of indifference or negligence." However, because the complaint failed to allege facts showing that the defendants were in any way personally responsible for the delay, the district court held that it failed to state a claim against them. On that basis, the court entered judgment for the defendants.

II

In *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia*, 428 U.S. 153, at 173, 96 S.Ct. 2909, at 2925, 49 L.Ed.2d 859 (joint opinion), proscribed by the Eighth Amendment." "This is true," said the Court, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* 429 U.S. at 104–105, 97 S.Ct. at 291 (footnote omitted).

■ In light of this holding, we conclude that Duncan has at least stated a claim under § 1983. While the initial failure to properly diagnose his injury may be attributable to no more than an error in judgment, which may or may not be actionable as negligence, the failure to promptly schedule surgery, once the need for it was recognized and in the face of Duncan's repeated complaints of severe pain, raises serious questions regarding the prison hospital officials' concern for their patient. Whether this delay was in fact due to the hospital officials' deliberate indifference to Duncan's serious medical needs remains to be proved, but the facts alleged certainly give rise to at least an inference of such indifference.

Notwithstanding its conclusion that Duncan may be entitled to some kind of relief, the district court dismissed the complaint as to both of the defendants because it failed to allege that they "personally participated in the alleged misconduct." Relying on the rule that liability for money damages under § 1983 will not be imposed vicariously upon a theory of *respondeat superior, see Adams v. Pate,* 445 F.2d 105, 108 (7th Cir. 1971), the district court ruled that specific allegations of fact showing personal knowledge or involvement on the part of the defendants were necessary to state such a claim. Because Duncan's complaint did not allege such facts, the court concluded that dismissal was proper.

■ It is true that a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. § 1983. *Adams v. Pate, supra; Stringer v. Rowe,* 616 F.2d 993, 1000–1001 (7th Cir. 1980). But by treating this general principle of recovery under § 1983 as a strict rule of pleading and dismissing a complaint which otherwise states a valid claim, we believe the district court ran afoul of the well established requirement that *pro se* pleadings be held to less stringent standards than those prepared by counsel. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The accepted rule in appraising the sufficiency of the complaint is that it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Where the challenged complaint is one that has been prepared without the benefit of legal expertise, it must be liberally construed to determine whether it meets this test. *French v. Heyne,* 547 F.2d 994, 996 (7th Cir. 1976).

■ Applying these principles to Duncan's complaint, we conclude that the district court erred in granting dismissal as to defendant Ronald Freake. His position as administrator of the prison hospital justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct. If he later disclaims knowledge and responsibility for the alleged misconduct, if he later disclaims knowledge and responsibility for the delay in treatment suffered by Duncan, he can readily identify those who were responsible.

This approach was recently utilized by the court in *Chavis v. Rowe,* 643 F.2d 1281 at 1290 (7th Cir. 1981). Plaintiff in that case, an inmate at the Menard Correctional Center, sued a number of officials of the Illinois Department of Corrections who allegedly violated his Eighth and Fourteenth Amendment rights. One of the Eighth Amendment claims related to the conditions under which plaintiff was forced to live during the time he was placed in the segregation unit of the prison. In evaluating that claim, the court noted that "Chavis' failure to name a particular defendant in connection with his Eighth Amendment allegation is no bar to this claim." *Id.* at 1290. Because "[d]irect individual responsibility for the conditions of segregation imposed on plaintiff must have rested on an official at a relatively high administrative level," the court concluded that the allegations describing those conditions were sufficient to state a claim against defendant Rowe, the Director of the Illinois Department of Corrections. *Id.* In the event Rowe later disclaimed knowledge and responsibility, the court noted that he was in a position to demonstrate who did bear responsibility for whatever conditions existed.

■ This reasoning is equally applicable to the case at bar. As administrator of the prison hospital, Freake bears responsibility for insuring that prison inmates receive adequate medical care. This responsibility is a sufficient basis from which to infer his personal involvement in the denial of such care at the pleading stage of the proceeding, at least where the denial is as gross as

has been claimed here. If it later develops that Freake was not personally involved, he is in a better position than Duncan to identify those who were.

To be sure, our conclusion in both this case and *Chavis* does represent somewhat of a departure from a strict application of *Adams v. Pate, supra.* But it is a departure which we believe is justified by the nature of the claims presented. Both cases involve claims relating to conditions or practices which, if they in fact do exist, would very likely be known to, or acquiesced in, by officials at a relatively high administrative level. At the same time, the conditions or practices upon which the claims are based may be of such a kind that the claimant will have had no personal contact with, or knowledge of, the person directly responsible. Under these circumstances, it is understandable that a *pro se* litigant would name only the administrative officer, whose identity he knows, as a defendant in his civil rights lawsuit. To dismiss such a suit because the complaint fails to expressly allege that the administrative officer did in fact know of, or acquiesce in, or was otherwise personally responsible for the claimed deprivation seems to us inconsistent with the obligation to liberally construe *pro se* pleadings. *Haines v. Kerner, supra.* Instead, the district court should proceed on the claim and allow the named defendant to assert his own noninvolvement, if that is the case, and designate those who would likely have been responsible for whatever deprivation may have occurred.

Essentially, this is the approach taken where a plaintiff is initially unable to name any of the persons whom he alleges to have injured him, and therefore uses fictitious names to refer to them in his complaint. *See Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir. 1980), and cases cited therein. In such cases the court has held that, instead of dismissing a complaint because it fails to identify certain unnamed defendants, the district court should order their disclosure or permit the plaintiff to obtain their identity through discovery. Although in this case Duncan did not use fictitious names for any of the defendants named in his complaint, the same reasoning would seem to apply here. As a *pro se* inmate of a state prison, Duncan is at a distinct disadvantage in trying to discover the identity of those who were directly responsible for the delay in his treatment. This difficulty should not be used to prevent him from seeking relief on an otherwise meritorious claim.

As to defendant Duckworth, the warden of the prison, there is equally no specific allegation of personal misconduct on his part. However, it is also true that he is more removed than Freake from the decision level at the hospital where the misconduct, if real, is likely to have occurred. It is doubtful that a prison warden would be directly involved in the day-to-day operation of the prison hospital such that he would have personally participated in, or have knowledge of, the kinds of decisions that led to the delay in treatment complained of by Duncan. Moreover, because we have already concluded that a claim has been stated against Freake, Duckworth's presence is not needed to insure that those more directly involved will be identified. We therefore affirm the district court's dismissal as to him. That portion of the judgment dismissing the claim as to Freake is reversed.