**Dale HOWARD, Plaintiff,**

v.

**Travis WHEATON, et al., Defendants.**

No. 85C9852.

United States District Court,
N.D. Illinois, E.D.

Aug. 12, 1987.

Bernard D. Ward, Hugh J. McCarthy & Assoc., Ltd., Chicago, Ill., for plaintiff.

Beverly Tiesenga, Asst. Atty. Gen., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dale Howard ("Howard"), formerly an inmate at Stateville Correctional Center in Joliet, Illinois ("Stateville"),[1] sues Travis

---

1. Howard is now confined at Pontiac Correctional Center.

Wheaton ("Wheaton"), Thomas Tibble ("Tibble") and Sandy Thompson ("Thompson") for damages under 42 U.S.C. § 1983 ("Section 1983"). At the time Howard was at Stateville, Wheaton was the Superintendent of "H House" (where Howard was imprisoned), while Tibble and Thompson were correctional officers assigned to H House.[2] Howard alleges Wheaton, Tibble and Thompson imposed cruel and unusual punishment on him in violation of the Eighth and Fourteenth Amendments.[3]

All defendants have moved to dismiss Howard's Amended Complaint (the "Complaint") under Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated in this memorandum opinion and order, defendants' motion is denied.

### Rule 12(b)(6) Standards

Howard's Complaint cannot (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)):

> be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Defendants must overcome formidable hurdles in that respect:

1. Howard's Complaint need contain only (*Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (footnote omitted)):

> "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

2. This Court must (a) accept as true the well-pleaded allegations in the Complaint and (b) view those allegations, and all reasonable inferences drawn from them, in the light most favorable to Ho-

ward (*Marmon Group, Inc. v. Rexnord*, 822 F.2d 31 (7th Cir.1987) (per curiam)).

### Howard's Allegations [4]

On August 28, 1985 Wheaton, who was responsible for cell assignments and overseeing maintenance in H House (¶ 6), ordered Howard moved from cell 1–E–02 to cell 2–C–04 (¶ 9). Thompson and Tibble carried out that order (¶ 10). While he was being moved, Howard saw cell 2–C–04 did not have hot water or a functioning toilet and immediately pointed out those deficiencies to Thompson and Tibble. Nevertheless Howard was left in cell 2–C–04 and remained there until September 3 (¶¶ 11–15).

On September 3 Thompson, on Tibble's order, moved Howard to cell 2–C–06. Howard saw his new cell also lacked hot water and a functioning toilet and told Thompson about it. Again Howard was left in the new cell, this time until September 10 (¶¶ 15–18).

Howard was thus denied access to a functioning toilet and hot running water during the entire 13 days he was in cells 2–C–04 and 2–C–06 (¶¶ 1, 19). During that time he was forced to use the non-functioning toilets in those cells. His bodily wastes accumulated in those toilets, causing unsanitary conditions. Howard had only cold water available to him for washing himself while he was exposed to such conditions. As a result of his exposure Howard became ill and was in great pain (¶¶ 20–22).

### Contentions of the Parties

Howard contends those conditions in his cells from August 28 until September 10, 1985 were cruel and unusual punishment within the meaning of the Eighth Amendment. He charges defendants intentionally or with deliberate indifference exposed him to those unconstitutional conditions, there-

---

**2.** H House then housed the protective custody unit at Stateville.

**3.** As this Court has frequently remarked, precision would require all such claims against "state actors" to be labeled solely in Fourteenth Amendment terms. As a matter of convenience, this opinion will follow the universal (though

technically inaccurate) practice of citing to the underlying Bill of Rights provision, even though its incorporation by the Fourteenth Amendment is what Howard really relies upon.

**4.** This opinion will simply cite to the Complaint in the form "¶ —."

by causing his injuries (¶ 23). He seeks to recover nominal, compensatory and punitive damages from defendants in their individual capacities under Section 1983.

Defendants argue Howard's allegations fail to establish an Eighth Amendment violation by any of them and, in the alternative, fail to state a claim against Wheaton under Section 1983. They are wrong on both counts.

### Cruel and Unusual Punishment

*Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir.1986) (citations omitted) explains:

> The Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification.... Because conditions of confinement are part of the penalty imposed upon criminal offenders, they too fall within the ambit of the Eighth Amendment.... It is immaterial whether such conditions result from restrictions imposed for administrative, rather than punitive, reasons....
>
> The Eighth Amendment does not provide a fixed formula for determining whether the effect of particular conditions constitutes cruel and unusual punishment, but rather " 'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society.' " ...
> Conditions, alone or in combination, that do not, however, fall below the contemporary standards of decency, are not unconstitutional, and "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."

Defendants argue this Court must hold *as a matter of law* that Howard's 13–day confinement without access to hot water or a functioning toilet did not violate contemporary standards of decency. In this Court's view, that question is particularly suited to resolution by the genius of the jury system.

■ Under the Eighth Amendment prisons must provide inmates with "an environment that does not threaten their mental and physical well-being" (*Madyun v. Thompson*, 657 F.2d 868, 874 (7th Cir. 1981)). That in turn requires prisons to provide (*Toussaint v. McCarthy*, 597 F.Supp. 1388, 1411 (N.D.Cal.1984), quoting *Martino v. Carey*, 563 F.Supp. 984, 999 (D.Or.1983)):

> adequate means of hygiene, and the sanitary disposal of bodily wastes so that the wastes do not contaminate the cells....

Defendants admit (as they must) that long-term incarceration in cells without functioning toilets would indeed violate the Eighth Amendment (see, e.g., *Flakes v. Percy*, 511 F.Supp. 1325, 1329–32 (W.D. Wis.1981)). But they assert Howard's 13–day confinement without hot water or a functioning toilet was de minimis (cf. *Maxton v. Johnson*, 488 F.Supp. 1030, 1033 n. 5 (D.S.C.1980)).

■ There is certainly force to defendants' contention that Howard's lack of hot water for 13 days—had that been Howard's only deprivation—was not an Eighth Amendment violation (see *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986)).[5] Indeed some courts have held short-term exposure to conditions that might "fall below the contemporary standards of decency" is not an Eighth Amendment problem. In *Reeves v. Lane*, 610 F.Supp. 847 (N.D.Ill. 1985) the government prevailed on its motion for summary judgment against a prisoner whose cell lacked drinking water for eight days. *Ra Chaka v. Nash*, 536 F.Supp. 613, 617 (N.D.Ill.1982) dismissed the Eighth Amendment claim of a prisoner who spent three days in a filthy cell with only a mattress on the floor. Those cases

---

**5.** But see *Grubbs v. Bradley*, 552 F.Supp. 1052, 1126 (M.D.Tenn.1982), holding confinement in a cell "for more than a few days without hot water plumbing" is cruel and unusual. In contrast, *Mann*, 796 F.2d at 85 found there was no constitutional right to hot water. This Court agrees that at least for a relatively short period (quaere as to where on the time scale the dividing line falls) a lack of hot water does not fall below contemporary standards of decency. That, however, does not control here.

may claim support in the first part of the Supreme Court's statement in *Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978) that while bad prison conditions "might be tolerable for a few days," such conditions could become "intolerably cruel" if they lasted "for weeks or months."

██ But neither those cases nor the *Hutto* principle establish or even directly support the notion that depriving a prisoner of a functioning toilet (coupled with the absence of hot water) for 13 days is de minimis for Eighth Amendment purposes *as a matter of law*. As Justice Brennan noted in his concurring opinion in *Rhodes v. Chapman*, 452 U.S. 337, 364, 101 S.Ct. 2392, 2408, 69 L.Ed.2d 59 (1981) (citation omitted):

> In determining when prison conditions pass beyond legitimate punishment and become cruel and unusual, the "touchstone is the effect upon the imprisoned."

It is clear beyond cavil that Howard was exposed to unsanitary and possibly unhealthful conditions in his cells because he was forced to urinate and defecate in one broken toilet for six days and in another for the next seven days. Those conditions were exacerbated by the unavailability, in both cells, of hot water with which to cleanse himself. Howard's assertion that the conditions caused him to become ill (¶ 22) is plausible and must be accepted as true for present purposes.[6]

*Reeves* and *Ra Chaka* did not involve conditions even approaching a comparable level of danger to a prisoner's health. In *Reeves* the prisoner lacked drinking water in his cell but had unlimited access else-

where in the cell block during part of the day. In *Ra Chaka* the prisoner did spend three days in a dirty cell,[7] but that cell was equipped with a working toilet.

By contrast, many other cases have found or suggested that even short-term confinement in a cell without a toilet violates the Eighth Amendment. *Flakes*, 511 F.Supp. at 1332 (after citing and quoting from a series of other cases) said confining a person "for any significant period of time" in a cell without a flush toilet would violate the Constitution. *Strachan v. Ashe*, 548 F.Supp. 1193, 1202–03 (D.Mass. 1982), quoting and relying on *Lareau v. MacDougall*, 473 F.2d 974 (2d Cir.1972) (as did *Flakes* ), granted a prisoner summary judgment on his Eighth Amendment claim because the prisoner had been held in an isolation cell with only a "soil pot" for 15 days.[8] *Heitman v. Gabriel*, 524 F.Supp. 622, 626 (W.D.Mo.1981) went so far as to order (citing *Flakes* ):

> No inmate shall be confined for more than one hour in any locked cell which does not have working plumbing.

Such case law confirms the impropriety of ruling as a matter of law that Howard's allegations fail to state an Eighth Amendment violation (cf. *Eades v. Thompson*, 823 F.2d 1055, 1060–1061 (7th Cir.1987)). If Howard can deliver as advertised in factual terms, a jury must be allowed to decide whether the conditions under which he suffered violated "evolving standards of decency" (see *Hawkins v. Hall*, 644 F.2d 914, 917 n. 2 (1st Cir.1981)). Of course, such evidentiary questions as whether Howard can in fact support his allegations and whether defendants have legitimate excus-

---

**6.** Under a notice pleading regime that allegation suffices to inform defendants as to the nature of Howard's claimed injuries. Defendants also urge Howard has not stated a claim for deprivation of medical care because he has not alleged defendants even knew he was ill. That is no better than a straw man: Howard does not purport to advance a claim based on inadequate medical care. And for recovery on the theory Howard does assert, all he has to show is that the damages were the reasonably foreseeable consequence of the wrongful conduct.

**7.** That really mirrors the *Hutto* dictum that a "filthy, overcrowded cell ... might be tolerable

for a few days ..." (437 U.S. at 686–87, 98 S.Ct. at 2571).

**8.** Defendants attempt to distinguish *Flakes* and *Strachan* by noting those cases involved challenges to official prison policies, while Howard advances no such challenge. Of course that is a distinction without a difference. Defendants are being sued as individuals for their individual acts. On that score, *Flakes* and *Strachan* are directly relevant as precedents finding that comparable deprivations violate the Eighth Amendment. It matters not a whit to that legal standard whether those deprivations were caused by individual actions or by prison policies.

es or defenses for their alleged conduct cannot be resolved on defendants' motion to dismiss (see *Madyun,* 657 F.2d at 873).

Defendants also would have it that Howard's allegations do not establish the state of mind requisite for Eighth Amendment violations. As *Shockley v. Jones,* 823 F.2d 1068, 1072 (7th Cir.1987), citing and quoting *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), reiterated:

> "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate or reckless in the criminal law sense." ... Negligence, gross negligence or even "recklessness" as that term is used in tort cases, is not enough.

In *Shockley* the prisoner failed to state a claim of deliberate indifference because he not only omitted any allegation of deliberate indifference but also complained only of a delay that may or may not have been negligent but was not charged to have been intentional (at 1072).

That contrasts sharply with (1) Howard's specific allegation of defendants' deliberate indifference to the conditions in his cells and (2) his allegations of facts from which such deliberate indifference can be reasonably inferred. What the Complaint says is that defendants were fully aware of the conditions in Howard's cell. That being so, their failure to extricate him from those conditions for 13 days reasonably implies deliberate indifference toward his health— or even intentional mistreatment. And that implication is reinforced by the fact that when Tibble and Thompson did move Howard after he had spent six days in the first cell, they placed him in another cell without hot water or a working toilet and left him there for seven more days.

Several other factors support an inference of deliberate indifference. Defend-

ants had to know Howard's exposure to such unsanitary conditions might endanger his health. On a Rule 12(b)(6) motion this Court is not obligated to dream up the possibility of some legitimate justification for exposing him to those conditions, and such exposure could have been easily avoided (see *Duckworth,* 780 F.2d at 653–56). Clearly Howard's allegations imply far more than mere delay and therefore suffice to defeat a motion to dismiss (see *Eades,* at 1061).

### *Personal Involvement*

▇ Wheaton also makes a separate argument: Even if Howard has sufficiently stated a Section 1983 claim against someone for violation of the Eighth Amendment, Wheaton is not that someone because Wheaton was not personally involved in that violation. Unquestionably Wheaton's exposure to liability must rest on his having caused or participated in the Eighth Amendment violation, not simply because he supervised the actual wrongdoers (*Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983)). That, then, is the standard this Court must apply.

Howard's Complaint refers to Wheaton just twice by name and twice via the collective term "defendants":

1. Wheaton is the Superintendent of H House and as such is responsible for cell assignments and maintenance (¶ 6).

2. Wheaton ordered Howard moved into the first cell that lacked hot water and a functioning toilet (¶ 9).

3. Wheaton (like his codefendants) knew of, or was deliberately indifferent to, the conditions in Howard's cell (¶ 23).[9]

4. Wheaton's acts and omissions (like those of his codefendants) damaged Howard "through the infliction of unnecessary pain and the deterioration of his general health" (¶ 24).[10]

---

9. Though that allegation is one of two Complaint paragraphs under the heading "Legal Claims," it is only the last part of ¶ 23 that states legal conclusions, while the portion summarized in the text is factual in nature. As the text goes on to explain, Howard was not in a position to know whether Wheaton was in fact aware of the conditions in his cell. At this threshold stage, however, such knowledge can fairly be inferred from Wheaton's position.

10. That allegation too is under the "Legal Claims" rubric, but it too is partly factual.

Under *Duncan v. Duckworth*, 644 F.2d 653, 655–56 (7th Cir.1981) those allegations are enough to create the required inference of Wheaton's personal involvement in the Eighth Amendment violation. There a pro se plaintiff alleged an Eighth Amendment violation because of inadequate medical care in a prison hospital. Only the administrator of the prison hospital and the warden (see n. 11) were named as defendants. *Duncan* held the administrator's position of responsibility was a sufficient basis from which to infer personal responsibility for the plaintiff's injuries, at least on a motion to dismiss (654 F.2d at 655).

Several factors influenced that decision (*id.* at 655–56):

    1. *Duncan* involved a pro se plaintiff, whose allegations were given greater leeway than those prepared by counsel.

    2. According to *Duncan* the asserted gross denial of proper medical care would likely be known or acquiesced in by a direct supervisory official—such as the hospital administrator.

    3. There the plaintiff was not in a position to know who was in fact responsible for his injuries. Conversely, the defendant supervisor was in a position to know or at least find out who caused plaintiff's injuries.

Though Howard's situation is not on all fours with that of the *Duncan* plaintiff, the similarities are controlling (and the one dissimilarity is not).

At this pleading stage—before discovery—Howard is not in a position to know who was ultimately responsible for his remaining in the cells without hot water and without functioning toilets for 13 days. Howard told Thompson and Tibble about the condition of his cells, but he cannot know what they did with that information. Because Wheaton is responsible for all assignments and maintenance, it would have been logical for them to have told Wheaton about the problems with Howard's cells. They may not have done so, but only defendants know what actually happened. Given Wheaton's position as head of a sin-

gle unit—H House—and not all of Stateville,[11] it was reasonable for Howard to join all three defendants and then proceed to sort out the identity of all those responsible for the asserted Eighth Amendment violation. As in *Duncan*, 654 F.2d at 656, Howard's understandable ignorance should not prevent him from seeking relief against Wheaton on an otherwise meritorious claim.

Wheaton insists *Duncan* should not apply here because Howard is represented by appointed counsel and has had a chance to conduct discovery before filing the Complaint. This Court has no way of knowing how much or what type of discovery has taken place. In any case, the Complaint was really just his lawyer's rewriting of Howard's original pro se version, with almost no substantive changes. Howard's attorney is in no better position than Howard to know who was responsible for the alleged Eighth Amendment violation.

*Duncan* cannot fairly be limited to pro se litigants. It was the nature of the plaintiff's claim (more than any other factor) and of the defendant's position in the prison facility that caused the Court of Appeals to uphold the complaint there (654 F.2d at 656). Howard has a comparable claim and is entitled to comparable deference. He has alleged enough to create the inference, at this threshold stage in the proceedings, of Wheaton's personal involvement in the Eighth Amendment violation. That defeats Wheaton's motion to dismiss.

### Conclusion

This Court cannot say as a matter of law that Howard's allegations, if proved, would fail to establish that defendants imposed cruel and unusual punishment in violation of the Eighth Amendment. Howard has sufficiently alleged each defendant was (1) deliberately indifferent to his needs and (2) personally involved in any Eighth Amendment violation. Accordingly defendants' motion to dismiss for failure to state a claim is denied, and they are ordered to answer the Complaint on or before August

---

**11.** Significantly *Duncan* upheld the complaint there against the hospital administrator (whose position paralleled Wheaton's here) while dismissing it against the prison warden.

26, 1987. This action is set for a status hearing August 31, 1987 at 9 a.m.