**Arthur SMALLWOOD, Plaintiff,**

v.

**Jerry RENFRO,[1] et al., Defendants.**

**No. 88 C 787.**

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1989.

---

**1.** Both parties have followed the caption's spelling of "Renfro," but the name defendant's own affidavit shows the correct spelling is "Renfrow." This opinion will of course follow Renfrow's lead (cf. Shakespeare, *Othello* Act 2, scene 3, lines 155 ff.).

Glenn M. Sowa, Law Offices of John F. Donahue, Geneva, Ill., for plaintiff.

Neil F. Hartigan, Glenn Grevengoed, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Arthur Smallwood ("Smallwood") has sued Jerry Renfrow ("Renfrow"), Jay Fairman ("Fairman"), Stacey McKinley ("McKinley"),[2] Donald Cartwright ("Cart-

---

2. Here too this opinion departs from both counsels' usage in favor of what appears to be the party's own spelling. Both sides have used "McKinnley" throughout their papers, but Ms. McKinley's manual signatures on the grievance form that ruled on Smallwood's grievance (D.Ex. 5) plainly do not include a double "n."

wright") and Robert Coupland ("Coupland") under 42 U.S.C. § 1983 ("Section 1983"), asserting violations of Smallwood's rights under the Eighth[3] and Fourteenth Amendments[4] stemming from an incident at Joliet Correctional Center ("Joliet"). All defendants have now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, the motion is granted in part and denied in part.

### Facts[5]

Smallwood is a prisoner incarcerated at Joliet. At 6 p.m. September 9, 1987 Smallwood was involved in a fight in the prison library with fellow inmate Antonio Harris (D.Jt. 12($l$) ¶ 7[6]). Smallwood's lip was cut during the fight (*id.* ¶ 8; Smallwood Dep. 10–11). Smallwood was later given a "disciplinary ticket" (Smallwood Dep. 35).

Correctional Officer Eichelman (not a defendant here) stopped the fight and summoned his superior, Lieutenant Renfrow, to the library (D.Jt. 12($l$) ¶¶ 2, 10). When Renfrow arrived Smallwood asked to go to the hospital. Renfrow denied the request and ordered Smallwood to return to the dorm (Smallwood Dep. 16). Renfrow did not escort Smallwood back there (D.Jt. 12($l$) ¶ 12).

Sergeant Coupland met Smallwood when he arrived at the dorm (*id.* ¶ 13). Coupland started to let Smallwood go to the hospital, but Renfrow (also Coupland's superior offi-

cer) stopped Smallwood. Renfrow says he did not believe Smallwood's injury was serious and he knew a medical technician would be available in the dorm to treat Smallwood (Renfrow Aff. ¶¶ 5, 7). Smallwood returned to his dorm and wrote out a grievance (D.Jt. 12($l$) ¶ 15). Renfrow says Smallwood was then treated by a medical technician that same evening (Renfrow Aff. ¶ 8). Smallwood denies he was treated that day (Smallwood Dep. 39), and his version will of course be accepted on that score.

At about 7 p.m. Major Cartwright, duty warden at the time, visited Smallwood's dorm (D.Jt. 12($l$) ¶ 16). Smallwood told Cartwright he needed to go to the hospital (Smallwood Dep. 20), but Cartwright deferred to Renfrow's decision (D.Jt. 12($l$) ¶ 17). Though Cartwright does not recall seeing or talking to Smallwood (Cartwright Aff. ¶ 5), Smallwood says that after denying his request to go to the hospital Cartwright told him to pack up his belongings because he was going to the segregation unit (Smallwood Dep. 21). Again Smallwood's account is credited here.

Smallwood packed his belongings and then slept until about 9 p.m. (*id.*). Coupland then arrived and told Smallwood to "get your shit ready, because Lieutenant Renfrow is on his way up here to get you" (*id.*). When Smallwood questioned Coupland's orders, Coupland said (*id.*):

Instead her quite legible signature looks to be in the most familiar "McKinley" form of the name.

**3.** As this Court has frequently remarked, precision would require all such claims against "state actors" to be labeled solely in Fourteenth Amendment terms. As a matter of convenience, however, this opinion will follow the universal (though technically inaccurate) practice of citing to the underlying Bill of Rights provision, even though its incorporation by the Fourteenth Amendment is what Smallwood really relies upon.

**4.** Smallwood also invokes the Fifth Amendment as the asserted source of protection of his equal protection and due process rights. Not only is that conceptually wrong (see n. 3), but such a Fifth Amendment claim (unlike one under (say) the Eighth Amendment) adds nothing whatever to the express language of the Fourteenth Amendment. All Complaint references to the Fifth Amendment are therefore stricken.

**5.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court draws all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Smallwood (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987)).

**6.** This District Court's General Rule 12($l$) requires a party moving for summary judgment to submit a statement of material facts as to which there are no genuine issues. General Rule 12(m) then requires the nonmovant to respond by admitting or controverting each paragraph of the movant's statement. Here all defendants have submitted a joint statement ("D.Jt. 12($l$)"). All citations to that statement refer to paragraphs admitted by Smallwood's response.

Don't give me your shit. Just get your shit and take it towards the front.

Renfrow then arrived at the dorm. After a short delay Smallwood and Renfrow started toward the segregation unit. On the way Smallwood complained about being taken to segregation (D.Jt. 12(*l*) ¶ 23). At some point during the trip Renfrow grabbed Smallwood by the neck and choked him (Smallwood Dep. 26–27). Renfrow also hit Smallwood on the arm with a radio (*id.* 29). Renfrow's denial of having struck or choked Smallwood (Renfrow Aff. ¶ 10) must be and is discredited on the current motion.

Smallwood spent two days in segregation (D.Jt. 12(*l*) ¶ 24). During that time he never asked for medical assistance (*id.* ¶ 25). However, on the morning of September 11 a nurse did examine Smallwood (Smallwood Dep. 41). Smallwood then had a bruise on his arm (D.Jt. 12(*l*) ¶ 26). In addition the nurse said it looked as if Smallwood's lip needed stitches, but you could not stitch an old wound after 24 hours (Smallwood Dep. 41). Smallwood's arm was x-rayed on September 20. It was not fractured (Smallwood Mem. Ex. 2).

Smallwood filed a grievance with the Institutional Inquiry Board ("Board") (D.Jt. 12(*l*) ¶ 27). Board Chairman McKinley interviewed both Smallwood and Renfrow. Smallwood admits McKinley followed all the required procedures in investigating his grievance (D.Jt. 12(*l*) ¶ 30). Board ultimately held Smallwood's grievance was "without foundation" (Smallwood Dep. 47).

### Contentions of the Parties

When this Court found Smallwood's initial self-prepared complaint passed the threshold non-"frivolousness" test to permit in forma pauperis filing, this Court followed its almost universal practice of appointing counsel to represent him pro bono publico. As frequently occurs, that

ultimately resulted in an Amended Complaint ("Complaint") prepared by appointed counsel. It comprises two counts, each of which sues all defendants "in both their individual and official capacities" (Complaint ¶ 10). Count I asserts violations of the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's guaranties of equal protection and due process. It seeks $5,000 in compensatory damages, $10,000 in punitive damages and costs from all defendants jointly and severally.

Count II is confusing. It alleges a failure to "instruct, supervise, control and discipline," seeks the same damages as in Count I and names the same individuals as defendants. Even though it incorporates all of Count I's substantive allegations, Count II makes no mention of the Eighth Amendment, alleging only Fourteenth (and Fifth) Amendment violations.[7] Count II also seeks compensatory (but not punitive) damages from "Joliet Correctional Center" —though that is neither a named defendant nor a legal entity.

Defendants respond with three arguments:

1. All defendants except Renfrow lack the requisite personal involvement to be liable under Section 1983.

2. Even viewed in Smallwood's favor, the facts do not support his constitutional claims.

3. To the extent defendants are sued in their individual capacity, they are entitled to qualified immunity, while the asserted official-capacity claims are barred by the Eleventh Amendment.

This opinion will adopt a somewhat different sequence, starting with the Eleventh Amendment analysis.

### Eleventh Amendment

■ *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114

---

7. To be sure, the Fourteenth Amendment incorporates the Eighth (*Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)), and a purist suing state defendants could well content himself or herself with invoking only the Fourteenth Amendment whatever the nature of the claimed constitutional deprivations (see

n. 3). But counsel here is certainly no such purist, as evidenced not only by the Count I reference to the Eighth Amendment but also by both counts' unthinking citation of the Fifth Amendment (see n. 4). Counsel's omission of an Eighth Amendment reference from Count II is therefore puzzling.

(1985) (citation omitted, emphasis in original) sought to put to rest the then-existing confusion as to the effect of an "official capacity" designation in a federal action against state officials:

> [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is *not* a suit against the official personally, for the real party in interest is the entity.

More recently *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir.1987) (citations omitted) has repeated the identical proposition:

> A suit for damages against a state official in his or her official capacity is a suit against the state for Eleventh Amendment purposes.

That being so, *Graham*, 473 U.S. at 169, 105 S.Ct. at 3107 (footnote and citations omitted) teaches:

> The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.... This bar remains in effect when state officials are sued for damages in their official capacity.[8]

Nor is the rule different in actions brought under Section 1983, which "was not intended to abrogate a State's Eleventh Amendment immunity" (*id.* at 169 n. 17, 105 S.Ct. at 3107 n. 17). And as to the specific kind of lawsuit involved here, *Shockley*, 823 F.2d at 1070 held:

> Illinois did not consent to suit in the statute creating the Illinois Department of Corrections, Ill.Ann.Stat. ch. 38, ¶¶ 1001–1201 (Smith–Hurd 1986)....

Thus any claims by Smallwood against the officers in their official capacities are barred by the Eleventh Amendment. Those claims are dismissed with prejudice.

One additional issue merits brief discussion. Count II ¶ 21 says:

> Acting under color of law and pursuant to official policy or custom, Defendants Fairman, Renfro, Cartwright and Coupland and the Joliet Correctional Center

knowingly, recklessly, or with gross negligence failed to instruct, supervise, control and discipline on a continuing basis Defendant officer employees....

It appears Smallwood is there attempting to state a claim against the individuals *and* the State of Illinois (through Joliet Correctional Center). His allegations mimic the basis that *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) sets out for municipal liability. But *municipal* liability does not implicate Eleventh Amendment concerns, as would a lawsuit against the state or one of its agencies.

■ Hence Smallwood's suggested recovery against the Joliet Correctional Center fails for two reasons. For one thing, there is no such legal entity as "Joliet Correctional Center." And to the extent that the designation is intended as a surrogate for the State of Illinois, the claim is barred by the Eleventh Amendment. Any such claim is of course also dismissed.

### *Eighth Amendment*

#### 1. *Medical Care*

■ *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) stated the now familiar test for an inmate's Eighth Amendment claim based on a lack of medical care (citation and footnotes omitted):

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." ... proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

---

**8.** [Footnote by this Court] See also *Papasan v. Allain*, 478 U.S. 265, 276–79, 106 S.Ct. 2932, 2939–41, 92 L.Ed.2d 209 (1986).

*Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985) has fleshed out that standard:

If the word "punishment" in cases of prisoner mistreatment is to retain a link with normal usage, the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense.

    \*    \*    \*    \*    \*    \*

Punishment implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.

In those terms, Smallwood must show:

1. a serious medical injury *and*

2. defendants' knowledge of the harm and conscious refusal to prevent it.

### A. Serious medical injury

Smallwood suffered a cut on his bottom lip resulting in its "bleeding real bad" (Smallwood Dep. 11, 17, 18). Once the bleeding stopped the lip was badly swollen (*id.* 23). Two days after the fight the nurse who examined Smallwood told him "it looked like it needed stitches, but you can't stitch an old wound after 24 hours, because it wouldn't do nothing but tear your skin" (*id.* 41).

Defendants Mem. 5 says:

A bloody lip brought about by plaintiff's own violence does not constitute a serious medical need in the constitutional sense.

That kind of statement is really irresponsible. It impermissibly characterizes Smallwood as having engaged in violence—a gratuitous statement totally at odds with Smallwood's uncontradicted evidence (Smallwood Dep. 10–11). And it impermissibly suggests prison officials can ignore medical needs if the injured person had been at fault in the incident that resulted in the injury that created those needs.

Defendants are on more solid footing in suggesting that a cut lip may not meet the level of seriousness called for by *Estelle*

and its progeny. Common experience suggests that with respect to most such cuts, and here Smallwood concededly did not ask for a medical technician during the post-incident period when he was back in the dorm. But the problem with disposing of the matter via Rule 56 is the need to give Smallwood the benefit of all reasonable inferences on an issue essentially factual in nature—one normally calling for resolution by a jury. And defendants are not helped by their failure to cite any cases outlining the parameters of "serious injuries," let alone any such cases useful in the context presented here. Because a factual dispute exists as to the seriousness of the injury, a jury should decide the issue (cf. *Howard v. Wheaton,* 668 F.Supp. 1140, 1142–43 (N.D. Ill.1987) (reaching the same result as to a quite different Eighth Amendment issue)).

### B. Deliberate Indifference

Several factors support a potential finding of deliberate indifference to Smallwood's problem. Again all that is needed is enough of a factual dispute to avert a Rule 56 judgment as a matter of law.

First, Coupland started to allow Smallwood to go to the hospital and subsided only on a direct countermanding order from Renfrow. Clearly Coupland thought the injury was serious enough to warrant medical attention.

Second, Renfrow says one reason he did not let Smallwood go to the hospital is because a medical technician was available to treat the injury at the dorm (Renfrow Aff. ¶ 7). Although Renfrow says the injury did not appear serious, he unquestionably recognized some medical care was required. If "impending harm" were found to exist (the subject dealt with in the prior section), Renfrow certainly had "actual knowledge of [such] impending harm" (*Duckworth,* 780 F.2d at 653).

It is also fair to infer Renfrow consciously refused to allow Smallwood any treatment. He admittedly overruled Coupland's decision to take Smallwood to the hospital, and Smallwood says Renfrow choked and hit him on the way to the segregation unit. Those incidents impliedly evidence an ani-

mosity on Renfrow's part and his "deliberate indifference" to Smallwood's medical needs.

\* \* \* \* \* \*

In sum, disputed issues of fact remain on both components of Smallwood's Eighth Amendment claim based on deprivation of medical care. On that threshold issue defendants' motion must fail, and this opinion must later deal with the individual defendants' exposure to that claim.

### 2. *Excessive Force*

■ Smallwood claims his constitutional rights were violated when Renfrow used excessive force in choking him and hitting him with a radio during his transfer to the segregation unit. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed. 2d 251 (1986) analyzed a prisoner's claim of excessive force (at least in the context of a prison riot in which the prisoner was shot) under the Cruel and Unusual Punishment Clause of the Eighth Amendment.[9] More recently our Court of Appeals has expressly said "the *Whitley* approach must apply to beating prisoners as well" (*Williams v. Boles,* 841 F.2d 181, 183 (7th Cir.1988)).

That, however, is *not* to say an *Estelle*-type requirement of "serious injury" applies to a prison official's gratuitous infliction of physical harm on a prisoner. *Williams, id.* went on to say:

> *Whitley* does not contain a requirement of "severe injury." We held in *Meriwether v. Faulkner,* 821 F.2d 408, 415 n. 8 (7th Cir.1987), that for prisoners' complaints "the Eighth Amendment's prohibition against cruel and unusual punishment and any substantive rights ... under the Due Process Clause are coextensive." So *Gumz* [*v. Morrissette,* 772 F.2d 1395 (7th Cir.1985) ] does not apply to battery of prisoners; *Whitley* supplies the standards.

And on that score *Whitley,* 475 U.S. at 320-21, 106 S.Ct. at 1084-85 (citations omitted) had put it in these terms as to the situation with which it dealt:

[W]e think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." ... "[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted" ... are relevant to the ultimate determination.... From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur [citing *Duckworth* among other cases]. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.

Smallwood's version and Renfrow's denial questionably present a disputed factual issue on the excessive force claim. Smallwood says he did nothing to provoke Renfrow's attack. When Smallwood asked why he was being taken to segregation and renewed his request to go to the hospital, Renfrow said (Smallwood Dep. 23):

> Homosexual, you don't tell me. I don't have to answer to you. You don't tell me shit.

Smallwood then asked why Harris was not going to segregation too. At that point Renfrow grabbed Smallwood and began choking him (*id.* 26). After a few moment's struggle, Renfrow hit Smallwood on the arm with a radio.

That version depicts a completely unjustified application of force. No safety concern was served by Renfrow's choking and hitting Smallwood. Such a wanton and unnecessary use of excessive force would plainly violate Smallwood's Eighth Amendment rights.

---

**9.** See also *Brown v. Smith,* 813 F.2d 1187, 1188 (11th Cir.1987).

*Equal Protection and Due Process*

Although Smallwood's Complaint also refers to equal protection, no evidence has been presented on that issue, nor (understandably) has either party addressed the issue. No equal protection claim is viable here.

Smallwood's due process claim points to McKinley's handling of his grievance. But Defendants' Mem. 6 retorts that McKinley followed the applicable procedures set forth in Ill.Admin.Code tit. 20, ¶¶ 504.800 to 504.870, negating any due process violation.

> In response Smallwood Mem. [4][10] says: The plaintiff does not contest the due process arguments tendered by Defendant McKinnley [sic].

That, coupled with Smallwood's failure to tender any evidence on the subject, must be taken as an acknowledgement that no due process claim exists. That claim, like the equal protection claim, is dismissed with prejudice.

*Personal Involvement*[11]

■ Section 1983 imposes liability only if the defendant is *personally* at fault. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) draws together earlier precedents into a brief summary:

> In *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), this court stressed that "[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." (emphasis in original); *see also McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir.1982); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory

official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf–Lillie*, 699 F.2d at 869. In short, "[i]ndividual liability for damages under section 1983 is predicated upon personal responsibility." *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984).

Renfrow is obviously the primary target here. His direct personal involvement in both alleged violations—denial of medical care and imposition of excessive force—clearly meets the Section 1983 test, and Defendants' Mem. 2–4 does not challenge that.

Two defendants just as clearly had no personal responsibility for the asserted Eighth Amendment violations. First, Board Chairman McKinley was neither present during the events nor had any involvement in the violations themselves. She is dismissed from the case. Second, Smallwood admits Joliet's Warden Fairman "had no personal involvement nor knowledge of any of the incidents alleged in the complaint" (D.Jt. 12(*l*) ¶ 3). Because Section 1983 does not render Fairman liable "simply because he supervised the actual wrongdoers" (*Howard*, 668 F.Supp. at 1144, citing *Wolf–Lillie*), he too is dismissed.[12]

Closer analysis is called for as to the remaining two defendants. They will be looked at in turn.

■ It will be recalled that Coupland started to allow Smallwood to go to the hospital but was then ordered by Renfrow to return Smallwood to his cell. If Smallwood is right, that would present Coupland with a Hobson's choice: either to follow a direct order and sustain Section 1983 liability or to ignore Renfrow's order and risk sanctions for insubordination. That dilemma is avoided by giving a negative answer

---

**10.** Smallwood's Memorandum was submitted in unnumbered form. This opinion reflects the actual page numbering with the "[ ]" notation.

**11.** Because all claims other than those sounding in the Eighth Amendment have now been dismissed, all further analysis is similarly limited to Eighth Amendment issues.

**12.** Smallwood's Count II claim based on an alleged failure to instruct and control does not alter the analysis. Smallwood has presented no evidence at all of any involvement of Fairman, and Rule 56(e) says unsupported pleadings cannot bar summary judgment.

to the proposition that Coupland had a duty to ignore Renfrow's direct order.

To be sure, there are times when an officer has a duty to intervene. *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972) announced that principle some 16 years ago:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

Nor has *Byrd*'s age withered it;[13] see *Rascon*, 803 F.2d at 276–77, applying the *Byrd* analysis and citing numerous cases that have adopted its reasoning.

*Byrd* involved officers' use of excessive force and beatings—a patent constitutional violation. *Byrd* and its progeny teach that other officers—even subordinate officers—cannot stand by and ignore such obvious constitutional violations.

But in this situation the evidence (although taken, as it must be, in a light favorable to Smallwood) does not portray that egregious a situation. Even given Coupland's perception that Smallwood needed medical attention, Coupland was entitled to rely on the determination of his superior officer that such attention could be provided by the medical technicians available in Smallwood's dorm. In the sense required for Section 1983 liability,

Coupland did not "cause or participate" in the Eighth Amendment violations. He is dismissed from the case.[14]

■ That leaves only Cartwright, the duty warden at the time of the incident. In Smallwood's version (which must be credited) he asked Cartwright to take him to the hospital, but Cartwright denied the request. Smallwood is deemed to have admitted that Cartwright was following normal procedures in deferring to Renfrow's decision not to allow Smallwood to visit the hospital (D.Jt. 12(*l*) ¶ 18[15]). In Cartwright's view, he therefore lacks the requisite personal involvement.

Not so—under *Byrd* no superior officer can merely "pass the buck" along to his subordinates to exculpate himself from liability. Smallwood asked Cartwright for permission to go to the hospital. Unlike Coupland, Cartwright could have overridden Renfrow's decision, but he simply abdicated his authority in the face of a request directed to him personally. In such a scenario a trier of fact might reasonably find "deliberate indifference."

This does not create the prospect of Section 1983 liability on a respondeat superior theory, forbidden by such cases as *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). On the facts tendered by Smallwood, Cartwright was aware of his injury but consciously refused to allow medical treatment. That puts Cartwright in precisely the same position as Renfrow for constitutional purposes.

But Cartwright has another string to his bow. That final issue, nonliability due to qualified immunity, occupies the final section of this opinion.

### Qualified Immunity

By now it is old hat that government officials (such as the individual defendants

---

**13.** With apologies to Shakespeare, *Antony and Cleopatra*, Act 2, scene 2, line 243.

**14.** If there were any doubt on this score, qualified immunity principles (discussed in the next section) would insulate Coupland in any event.

**15.** Smallwood's General Rule 12(m) statement "neither admits nor denies" D.Jt. 12(*l*) ¶ 15. But that General Rule specifically requires the nonmovant to admit or controvert the movant's statements, with any statements not controverted being deemed admitted. That applies to D.Jt. 12(*l*) ¶ 18.

here) who engage in discretionary functions are entitled to qualified immunity from money damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known" (*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Plaintiff has the burden of showing the constitutional right was "clearly established" (*Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir. 1987), quoting *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984)). And *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987) (citations and footnote omitted) says:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.

■ Renfrow cannot even arguably qualify in those terms. Any prison official had to know in 1987 that intentionally withholding necessary medical care from a prisoner with a serious injury (necessarily assumed for these purposes) violated the Eighth Amendment. And it surely cannot be questioned that Renfrow had to know his unprovoked and unjustified choking and hitting of a prisoner violated the prisoner's "clearly established" constitutional right to be free from excessive force. No qualified immunity exculpates Renfrow.

■ Cartwright stands on a different playing field, however. Smallwood admits it was established policy for the duty ward-en to follow the recommendations of the officer having direct line responsibility (and presumably first-hand knowledge of the facts). Thus Cartwright was following regular procedures when he yielded to Renfrow's determination that Smallwood did not need hospital treatment. It is in that context that the qualified immunity issue must be resolved.

Smallwood has cited no cases, and this Court's limited independent search has located none,[16] in which the *Byrd* principle has been extended to a situation even reasonably comparable to this one. Certainly the established policy to which Cartwright adhered could have been viewed as a logical one in the prison setting, where the officer on the scene is reasonably perceived as being in the best position to evaluate the need for immediate medical care. It could scarcely be labeled clearly unreasonable to permit a supervisor (who arrived about one hour after the fight) to rely on the determination of his subordinate. Nothing in preexisting law alerted Cartwright to his potential liability. Accordingly he is entitled to qualified immunity and is dismissed as a defendant.

■ What has been said of Cartwright necessarily applies a fortiori to Coupland. Thus if any doubt were to exist as to the differing conclusions reached in the preceding section as to Coupland's and Cartright's vulnerability to direct Section 1983 liability under *Byrd* and like cases, it would be rendered moot by Coupland's undoubted entitlement to qualified immunity.

No case suggests the imposition of Section 1983 liability on an inferior officer for disobeying a direct order in any situation remotely (let alone clearly) like this one. Coupland could not reasonably have known

---

**16.** This Court and its law clerk engaged in a search of limited scope for two reasons:

1. As a general proposition, counsel ought to be expected to do their own lawyering. This Court has made the point in prior opinions that the asset in shortest supply in the justice system is a judge's time, with the time of law clerks running a close second. There is no real excuse for lawyers' shirking of their own responsibilities and shifting the burden to the judge and his or her staff.

2. In any case, it will be recalled the test here is one of a "clearly established" right. Absent a closely parallel Supreme Court decision or a comparable well-known decision emanating from a Court of Appeals somewhere (or one—even not so well-known—issuing from our Court of Appeals), that test cannot be met. And even minimal research has disclosed no such case.

**192**

Section 1983 liability might attach because he followed Renfrow's order. Coupland too is entitled to dismissal on qualified immunity grounds.

### Conclusion

There is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law, on the claims asserted against them in their official capacities—claims barred by the Eleventh Amendment. These claims are dismissed with prejudice.

Smallwood's Count I has asserted a viable Eighth Amendment claim for deprivation of medical care and excessive force against Renfrow. Disputed issues of material fact remain on those claims, and Renfrow's motion for summary judgment is denied.

All other claims, however, pose no material factual issues, and all other defendants are therefore entitled to a judgment as a matter of law—though for different reasons. McKinley and Fairman had no connection to the Eighth Amendment claims and lack the required personal involvement. Coupland's involvement was not such as to trigger Section 1983 liability, and in any event he is entitled to qualified immunity. Finally, though Cartwright was personally involved in the deprivation of medical care, he too escapes liability via qualified immunity.

Smallwood has really given up on on his claims based on equal protection and due process—understandably, for each lacks any evidentiary foundation. Count II is dismissed in its entirety.

All that remains, then, are the Count I Eighth Amendment claims against Renfrow. All other claims against the remaining defendants are dismissed. There will be a status hearing at 9 a.m. March 9, 1989 to discuss readying the lone surviving claim for trial.