Fred D. WILSON, Plaintiff,

v.

COOK COUNTY BOARD OF COMMISSIONERS, Michael F. Sheahan, James W. Fairman Jr., and James M. Carey, Defendants.

No. 94 C 551.

United States District Court, N.D. Illinois, Eastern Division.

March 15, 1995.

Carol Ann Repasky, Chicago, IL, for plaintiff.

Fred D. Wilson, pro se.

Terry L. McDonald, Douglas Staser Steffenson, Cook County State's Atty., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, Judge.

### Introduction

Twenty-nine years ago, Dr. Karl Menninger described the conditions endured by pretrial detainees in this nation's jails and lockups as "miserable, overcrowded, crime-and-disease-breeding."[1] Among the jails Dr. Menninger examined was the Cook County Jail (the "Jail," the subject of the instant case), which he toured with the then executive director of the John Howard Association. The superintendent of this institution conceded "that deviate sex practices, beating of inmates by other inmates, smuggling of contraband, and other vicious practices were routine in the Jail."[2] Dr. Menninger quoted the Commissioner of New York's Riker's Island Prison as saying, "We shouldn't treat cattle the way we have to treat our inmates."[3]

In 1974, a class action was filed in this Court attacking the conditions at Cook County Jail. *Duran v. Elrod,* 74 C 2949 ("*Duran* ").[4] Eight years later, a consent decree was entered in *Duran* which addressed all areas of food service, sanitation, recreation, access to the law library, overcrowding, and other conditions. In 1980, in connection with the enforcement of the consent decree, Judge Shadur appointed the John Howard Association to monitor conditions at the Jail and compliance with the decree. In 1990, the Seventh Circuit held that all claims for equitable relief were subsumed by the consent decree in *Duran. Martin v. Davis,* 917 F.2d 336, 339 (7th Cir.1990). Thus, only claims for money damages resulting from conditions at the Jail may be entertained outside *Duran.*

As demonstrated by the instant case and many others like it, neither *Duran* nor the passage of time has lessened the number or volume of complaints by inmates of the Cook County Jail. In a report issued last month (the eleventh so far),[5] the John Howard Association reported that, despite a significant increase in the size of the Jail and increased use of pretrial release procedures, the Jail continues to be grossly overcrowded, with a 1994 daily average of 1455 inmates sleeping on the floor.

"CCDOC [Cook County Department of Corrections, which administers the Jail] has entered the sixth consecutive year during which overcrowding has been a daily phenomenon. The most recent occasion

---

1. Menninger, *The Crime of Punishment* (The Viking Press, 1966); p. 45.

2. *Id.,* at 40.

3. *Id.,* at 38.

4. The current caption is *Duran v. Sheahan,* the defendant's name having been changed to identify the current Sheriff of Cook County.

5. "Court's Monitoring Report for *Duran v. Sheahan, et al.,* 74 C 2949, 1991 WL 105489; Jail Conditions at the Cook County Department of Corrections and Compliance With the Consent Decree" (John Howard Association, February 1, 1995). This report was submitted to Hon. George M. Marovich, the district judge currently assigned to the *Duran* case.

when there was no evidence of inmates sleeping on the floors in the Jail was December 30, 1988."

(*Id.*, at 4.)

In its 148 page report, the John Howard Association details both improvement and deterioration at the Jail in areas of environmental health, personal hygiene, food service, staffing, and other conditions. Taking our cue from the Seventh Circuit in *Martin* and its progeny, this Court will not indulge any further in examining the conditions at the Jail outside of the specific allegations raised by plaintiff in the instant case. It is difficult to be unmindful, however, of the sad fact that despite the best efforts of the Court, its monitor, counsel, and indeed the administrators of the Cook County Jail, Dr. Menninger's remarks in 1966 are at least as valid today as they were then.

In this historical and precedential context, the court will now examine plaintiff Fred D. Wilson's complaint and the current motion by defendants to dismiss that complaint.

### The Pleadings

Plaintiff Fred D. Wilson, who at the time he filed his complaint on January 27, 1994, had been incarcerated at the Jail since December 12, 1991,[6] brings this *pro se* action for damages pursuant to 42 U.S.C. § 1983 against the Cook County Board of Commissioners (the "Board"), Michael Sheahan, Cook County Sheriff, James W. Fairman Jr., Director of the Cook County Jail, and James M. Carey, Superintendent of Division 6 of the Jail (together, the "Individual Defendants"). Wilson, a pretrial detainee at the Jail, alleges that his conditions of confinement are unconstitutional under the Fourteenth Amendment. He has presented a litany of alleged constitutional violations by defendants: (1) overcrowding; (2) inadequate staffing; (3) inadequate food supply and service; (4) inadequate personal hygiene; (5) inadequate medical treatment; (6) inadequate opportunity for exercise; and (7) inadequate grievance procedures. He seeks $500,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

The Individual Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), alleging that Wilson has failed to state a claim upon which relief can be granted because, even if true, Wilson's allegations do not amount to constitutional violations. The Board has also moved to dismiss, claiming that it cannot be held liable under section 1983 for conduct of the Sheriff and his departments.

### *Standard of Review*

In ruling on a motion to dismiss, the court must presume all of the well-pleaded allegations of the complaint to be true, *Miree v. DeKalb County*, 433 U.S. 25, 27 N. 2, 97 S.Ct. 2490, 2492 N. 2, 53 L.Ed.2d 557 (1977), and must view those allegations in the light most favorable to plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1034 (7th Cir., 1987). Dismissal is proper only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In the case of a *pro se* litigant, the complaint will be held to a less stringent standard than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

Because Wilson is a pretrial detainee, his claims of unconstitutional conditions of confinement are analyzed under the constitutional guarantee of due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). *Bell* was a case of federal confinement, implicating the due process clause of the Fifth Amendment, but its holding has been applied to cases involving state confinement implicating Fourteenth Amendment due process. *Anderson v. Gutschenritter*, 836 F.2d 346, 348–49 (7th Cir.1988).

Under *Bell* the proper inquiry under a challenge to the conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty with-

---

6. Plaintiff does not explain why, as a pretrial detainee, he had been in the Jail more than two years. He is currently incarcerated at Stateville Correctional Center at Joliet, Illinois.

out due process of law is whether those conditions amount to punishment of the detainee. *Id.* "[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535, 99 S.Ct. at 1872.

■ Because a pretrial detainee is lawfully detained, however, he may be subjected to the restrictions and conditions of the detention facility so long as those restrictions and conditions do not amount to punishment or otherwise violate the constitution. *Id.* at 536–37, 99 S.Ct. at 1872–73. To determine whether a condition or restriction amounts to punishment in the constitutional sense, a court:

> must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination in general will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of a governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 538–39, 99 S.Ct. at 1873–74 (internal quotations in citations omitted).

■ The Seventh Circuit has looked to Eighth Amendment cases to define the term punishment and the state of mind required to find that a detention facility official's actions amount to punishment. Under Eighth Amendment analysis, the determination of whether conduct constitutes cruel and unusual punishment involves both a subjective and objective component. A plaintiff must prove both that the defendant acted with deliberate indifference to the plaintiff's needs (the sub-

jective component), and that the alleged deprivations were sufficiently severe to rise to the level of a constitutional violation (the objective component). *Wilson v. Seiter,* 501 U.S. 294, 298–302, 111 S.Ct. 2321, 2323–26, 115 L.Ed.2d 271 (1991). Deliberate indifference has been equated with criminal recklessness. *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Under this standard "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts on which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ——, 114 S.Ct. at 1979. The Seventh Circuit in *Salazar v. City of Chicago,* 940 F.2d 233, 238 (7th Cir. 1991) has adopted this subjective element for Fourteenth Amendment due process claims.

■ This court is troubled by the inherent difficulties in reconciling *Salazar's* deliberate indifference standard with the reasonableness standard set forth by the Supreme Court in *Bell.* The court agrees with Judge Grady's thorough examination of those inherent difficulties in *Miller v. Fairman,* 872 F.Supp. 498 (N.D.Ill.1994) (discussion of deliberate indifference standard versus reasonableness standard). Nonetheless, as Judge Grady noted, *Salazar* is the law in this Circuit and this court is bound to follow it. The court in *Salazar* was careful to note, however, that it:

> did not mean to imply that the Eighth Amendment governs the standard of conduct of a jailer towards a pretrial detainee. It does not because the Eighth Amendment prohibits only cruel and unusual punishment while the Fourteenth Amendment does not allow jailers to punish pretrial detainees at all, no matter how humane or common the punishment might be.

*Salazar,* 940 F.2d at 239–40. It is the objective component where the two analyses differ and, therefore, the standard under the Fourteenth Amendment remains whether the pretrial detainee has been punished at all, not

whether such punishment is so "extreme" as to amount to cruel and unusual. See *Miller*, 872 F.Supp. at 504 (objective prong analysis differs).

■■■ Finally, in addition to meeting the standard set forth in *Bell*, as interpreted by the Seventh Circuit, plaintiff must also allege a remedial injury for each of his claims. "Where no injury [is] present, no compensatory damages can be awarded." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). In *Stachura*, the Court held that the "abstract value of a constitutional right may not form the basis for section 1983 damages." *Id.* This court is aware that in *Farmer*, the Court held that "[o]ne does not have to await the consummation of a threatened injury to obtain preventative relief." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1983. Plaintiff here, however, seeks damages for injuries allegedly incurred, not equitable relief.[7]

After applying these standards to the allegations of plaintiff's complaint, for the reasons set forth below, the court grants both motions to dismiss in part and denies them in part.

### COUNTS I, II, VI, VII

■■■ At the outset, the Court can quickly dispose of the above counts because they all suffer from the same deficiency; failure to allege a remedial injury. As noted above, the Supreme Court has held that "[w]here no injury was present, no compensatory damages can be awarded." *Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543 (1986). Because plaintiff has failed to allege that he has suffered any injury as the result of the allegations contained in these counts, he cannot maintain a claim for compensatory damages.

For example, in Count I plaintiff sets forth the general conditions of overcrowding with which the courts in this district are all too familiar. He alleges that he sleeps on a urine-stained mattress on the floor, and lives in constant noise amid a general population not segregated from what he terms mental patients and AIDS carriers. While the conditions he alleges could at best be described as uncomfortable (as the individual defendants suggest) or at worst as deplorable (as plaintiff suggests), plaintiff has not alleged an injury as a result of living in these conditions.[8] Accordingly, any relief to which he might be entitled is through the *Duran* consent decree, not in an action for damages.

In Count II, plaintiff alleges that the Jail is inadequately staffed. He has not, however, presented any allegations of how he might have been harmed by this lack of staff. He has alleged that he has had a problem with one particular guard, but his problem is specific to that individual, and he has alleged no facts to tie this problem to his allegations of inadequate staffing.

In Count VI, plaintiff alleges that he does not get enough exercise, particularly outdoor exercise. He admits, however, that he is not restricted to a cell, and is allowed to go to a day room. Additionally, despite his suggestion that his "muscles are allowed to atrophy," the facts alleged in his complaint relating to his ability to move about belie this general conclusion. Moreover, he has not alleged that he has suffered any muscular pain or problems as a result of this alleged lack of exercise. Accordingly, the court concludes that as pled, Count VI fails to state a claim.

In Count VII, plaintiff alleges that the Jail has an inadequate grievance procedure. Again, because he has not alleged that he

---

**7.** As mentioned above (at 1–2), as a pretrial detainee of the Cook County Jail, plaintiff is covered as a class member under the consent decree in *Duran*. Under *Martin v. Davis*, 917 F.2d at 339 (7th Cir.1990), plaintiffs, such as Wilson, cannot raise claims for equitable relief outside a contempt order brought under the *Duran* consent decree.

**8.** In *Bell*, although the Court held that double-bunking for a limited period of time did not violate the Constitution, it did suggest that sub-

jecting a detainee to "genuine privation and hardship" over a greater period of time might amount to punishment. *Bell*, 441 U.S. at 542–43, 99 S.Ct. at 1875–76. In the instant case, plaintiff alleges that he has been detained at the Jail for over three years. Because he has not alleged an injury resulting from these conditions aside from his back problem discussed in his medical count, he has failed to state a claim based on the general overcrowding.

personally has ever attempted to use the grievance procedure, he cannot allege that he has been harmed by any possible inadequacies. Accordingly, he has not alleged a compensable injury, and has stated a claim for damages.

### COUNT IV—PERSONAL HYGIENE

■ In this count, plaintiff alleges that bed sheets are not changed regularly, his uniform has not been changed in over a month, and, at the time of his complaint, his towel had not been changed for nineteen months. He alleges that there are only three toilets, three showers, and three sinks for the increased number of detainees currently at the Jail. He further alleges that there is insufficient toilet paper, soap, cleaning materials, and that it is humiliating that he must beg for clean sheets, uniforms and underwear, even though "it is known that the supply room has an adequate amount to pass out."

It is difficult to see how such conditions could be "reasonably related to a legitimate government objective." *Bell*, 441 U.S. at 538, 99 S.Ct. at 1874. Thus, this court may infer that the purpose of these restrictive conditions (especially the failure to provide clean sheets and clothing when they are available) is to punish. Moreover, similar conditions have been held to violate the basic human necessity of a minimally hygienic living space amounting to cruel and unusual punishment, in violation of the Eighth Amendment. *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir.1992). If such conditions can violate the Eighth Amendment's prohibition against cruel and unusual punishment, they necessarily would also violate the Fourteenth Amendment's prohibition against any punishment at all.

In addition, plaintiff has alleged that all of the defendants are aware of these conditions, are aware of the potential danger that could result from these conditions, and have deliberately ignored those dangers. Thus, plaintiff has met the subjective component of the *Wilson* test. Accordingly, the court concludes Count IV that states a claim.

### COUNT V—MEDICAL AND MENTAL

In Count V plaintiff has alleged a litany of complaints relating to his medical care. All but two of those complaints can be dismissed because he suffered no injury. For example, he alleges that he tested positive for tuberculosis, was treated, but then never re-tested. He does not, however, allege that he has any symptoms of tuberculosis. He also alleges that he is not separated from "A.I.D.S. carriers" or psychotic detainees and active tuberculosis cases. Again, he has failed to allege how he has been injured as the result of his lack of segregation.

■ Plaintiff has, however, set forth two factual allegations that do support causes of action. First, he alleges that the Jail is a closed environment with no open windows, and that the ventilation system is grossly inadequate. As a result he is continuously exposed to environmental tobacco smoke, causing headaches and "nasalpharyneal [sic] irritations" and an inordinate amount of colds. The Seventh Circuit has indicated that adequate ventilation is a fundamental attribute of shelter that correction officials must provide under the Eighth Amendment. See *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir.1987). Again, if inadequate ventilation can amount to cruel and unusual punishment under the Eighth Amendment, it would also amount to prohibited punishment under the Fourteenth Amendment.

■ Additionally, plaintiff has alleged that he has had a laminectomy and that sleeping on the floor aggravates his condition, resulting in greater back pain. He has complained about this problem and requested an extra mattress, but instead has received only an over-the-counter pain medication. Read liberally, this allegation states that defendants have failed to treat adequately a specific injury and, therefore, meets the objective standard under *Bell*. Again, plaintiff alleges that all defendants are aware of these conditions and the possibility that they could create an excessive risk to his health and safety, and that defendants have deliberately ignored that risk. Accordingly, the court concludes that plaintiff has stated a claim with respect to the allegations of inadequate

ventilation and failure to treat his back injury.

### COUNT III—FOOD SERVICE

 Plaintiff has alleged that he is served cold food on dirty trays. In addition, he claims that he is rarely, if ever, served real meat, getting processed meat instead, which is often spoiled. He further alleges that at times there are roaches crawling over the food trays, and that the whole process is unsanitary and unhealthy. Read liberally, plaintiff has alleged that the prison officials have failed to provide nutritionally adequate food that is prepared and served under conditions which present an immediate danger to the health and welfare of the detainees who consume it. If true, this would amount to cruel and unusual punishment, in violation of the Eighth Amendment. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985), *cert. den.*, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986). Obviously, if true, such conditions are not reasonably related to any legitimate governmental objective, and would violate the Fourteenth Amendment prohibition against punishment.

Finally, plaintiff has alleged that all of the defendants were and are aware of these conditions, and are aware that such conditions create an excessive risk to his health and safety. Accordingly, he has met the subjective component of *Wilson*.

### THE BOARD'S MOTION

 In addition to arguing that the alleged conditions do not amount to a constitutional violation, the Board has also moved to dismiss, claiming that it cannot be liable for conduct undertaken by the Cook County Sheriff and his department. While this statement is indeed true, see *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989), *cert. den.*, 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990), the Board has misinterpreted plaintiff's claims against it. Plaintiff is not claiming that the Board is liable for the actions or inactions of the Sheriff, or anyone else. Plaintiff has alleged that pursuant to state statute the Board must appropriate and provide funds for the necessary, ordinary and contingent costs incurred by the office of the Sheriff in providing constitutionally required conditions at the Jail. 55 ILCS 5/3–15015. Thus, plaintiff alleges that the Board controls the purse strings and, despite knowledge of the punitive conditions at the Jail, has failed to provide the Sheriff with sufficient funds to alleviate the problems. He has alleged that the Board is deliberately indifferent to the excessive risk created by the conditions, and has failed to provide sufficient funds to eliminate those risks. Viewed liberally, his complaint states a claim against the Board, and cannot be dismissed.

### CONCLUSION

For the reasons set forth above, the court grants defendants' motions to dismiss Counts I, II, VI and VII. The court denies the motions to dismiss Counts III, IV, and those portions of V relating to inadequate ventilation and the alleged failure to treat plaintiff's back problems. The court will appoint counsel to represent plaintiff in the prosecution of the viable counts.