**Paul DE LA PAZ, Plaintiff,**

v.

**Howard A. PETERS, III, Director of the Illinois Department of Corrections; Keith Cooper, Warden of Joliet Correctional Center; Dwayne Clark, Assistant Warden of Security Operations, Defendants.**

No. 93 C 7652.

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 1997.

Paul De La Paz, Ina, IL, pro se.

Daniel R. Fusco, Rock, Fusco, Reynolds, Crowe & Garvey, Ltd., Chicago, IL, for Paul De La Paz.

Gary Michael Griffin, Illinois Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago IL, for Howard A. Peters, Keith Cooper, Dwayne Clark.

Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for Edan Lee, Lois Barr.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Paul De La Paz,[1] a prisoner of the Illinois Department of Corrections (IDOC), has sued certain IDOC officers under 42 U.S.C. § 1983 alleging that they violated his constitutional rights during his incarceration at the Joliet Correctional Center ("Joliet"). De La Paz's second amended complaint names the following defendants: Howard A. Peters, III, former Director of the Illinois Department of Corrections; Keith Cooper, Warden of Joliet Correctional Center; and Dwayne Clark, former Assistant Warden of Security Operations at Joliet, now at Stateville Correctional Center. The defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56; their motion is presently before the Court.

### RELEVANT FACTS

The following facts are taken from the parties' respective Local General Rule 12(M) and (N) statements of material facts as to which there is no genuine issue, and the accompanying exhibits.[2] De La Paz has been in the custody of the IDOC since No-

---

1. This Court appointed counsel to represent the pro se De La Paz on November 28, 1995.

2. Local General Rules 12(M) and 12(N) of the District Court for the Northern District of Illinois provide that a party moving for summary judgment must submit a statement listing the material facts it believes to be undisputed and which, taken together, entitle it to a judgment as a matter of law. The other party must then respond specifically to these allegations, and, where it denies that a fact is undisputed, it must come forward with references to the record that support a contrary finding. Local Rule 12(N)(3)(a). The non-movant may also submit additional facts, to which the movant must respond. Local Rules 12(N)(3)(b), 12(M). In this case, the defendants submitted a 12(M) statement ("Def.'s Facts"), to which De La Paz responded. De La Paz also produced a statement of additional facts ("Pl.'s Facts"), to which the defendants did not respond. Statements of undisputed fact not denied in accordance with the rule may be deemed admitted if properly supported by references to the record or other evidentiary material. *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir.1993). To the extent that they are supported by the record, De La Paz's additional facts are therefore taken as admitted.

vember 1985. De La Paz suffers from urinary and bowel incontinence because of a bullet lodged near his spinal cord.[3] (Pl.'s Facts ¶¶ 1–2.) The incontinence causes soiling of his clothing and bedding and yields bad odors. (Id. ¶ 3.) Dr. Howard A. Mueller, the Medical Director for the IDOC, made certain recommendations with respect to De La Paz's medical condition in 1987 and 1990. (Pl.'s Facts ¶ 4; Pl.'s Exs. A and B.) In identical memoranda (except for the date), he wrote: "Inmate De La Paz's problems continue. The problems are related to his inability to control his urine as a result of his spinal cord injury. This results in urine soiling of his clothes and bedding with a resultant bad odor. This problem will probably worsen with the coming warm weather." Dr. Mueller went on to say that "some things ... need to be done to minimize this problem." Specifically, he requested that De La Paz "be permitted to take daily showers" and that "[s]pecial attention ... be given to an adequate supply of clothing and bedding as will [sic] proper laundering." [4]

De La Paz was an inmate at Joliet from March 3, 1993 to May 29, 1996.[5] (Def.'s Facts ¶ 2.) Upon his arrival at Joliet, medical personnel saw De La Paz and checked him for medical conditions. (Def.'s Ex. 1133–34.) As a result of his incontinence, De La Paz desired access to daily showers. (Pl.'s Facts ¶ 1.) His condition and his requests for daily showers were repeatedly considered by the Joliet medical staff. (Def.'s Facts ¶ 3.) On no occasion during his time at Joliet did medical personnel grant him medical permission for daily showers. (Def.'s Facts ¶ 4.) Neverthe-

less, the medical staff approved a series of special permits allowing him to shower two or three times a week. On April 5, 1993, he was given permission to shower two times a week in Joliet's on-grounds hospital. (Def.'s Ex., Master File of Paul De La Paz, at 1137.) This special permit was only good for thirty days but was renewed for another thirty on May 5, 1993. (Id. at 114041.) The renewal allowed De La Paz to shower three times per week. This thirty day permit was renewed on June 4 and again on July 3, 1993. (Id. at 1136, 1143.) On August 5, 1993, De La Paz's showering privileges were extended for ninety days. (Id. at 1145.) His ninety day pass was renewed on November 4, 1993. (Id. at 1157.) Medical progress notes for March 17, 1994 show that De La Paz had "[n]o special shower or laundry permits" on that date. (Id. at 1165.) On April 6, 1994, he was given a new permit for showers three times a week in the facility Health Care Unit. (Id. at 1166.) On April 20, 1994, he again was given permission to shower three times a week for the next ninety days. Alma R. Holm, the Health Care Unit Administrator at River, his current location, testified by affidavit that between January 8, 1995 and March 19, 1996, De La Paz was given three-times-a-week shower permits on at least five occasions.[6] (Holm Aff. ¶ 2.)

On June 25, 1993, De La Paz requested a housing transfer from his cell house to an honor dorm. (Pl.'s Ex. D.) The honor dorm has facilities for disabled individuals and transfer to it would have afforded him daily showers and allowed him to launder his clothes. (Pl.'s Facts ¶¶ 7–8.) The request

---

**3.** De La Paz also suffers from foot drop. This condition requires him to wear a leg brace for support to walk and to use a handicap accessible shower facility.

**4.** Dr. Mueller also recommended that De La Paz "be provided with a daily supply of ice in hot weather" and, "though not medically required, a single cell...." (Id.)

**5.** De La Paz was initially sent to Pontiac Correctional Center ("Pontiac") on December 3, 1985. He was transferred to Menard Correctional Center on February 15, 1989; to Reed Correctional Center on September 4, 1991; and back to Pontiac on March 18, 1992, before arriving at Joliet on March 3, 1993. He currently is incarcerated

at the Illinois River Correctional Center, Canton, Illinois, a medium security facility ("River"). (Def.'s Facts ¶ 2.)

**6.** Administrator Holm also testifies that general population housing at River allows De La Paz to shower as many times a day as he wishes so long as the dayroom is open. De La Paz does not have a medical order for showering because of daily shower access. (Holm Aff. ¶ 1.) In his affidavit, Rodney J. Ahitow, the Warden at River, confirms that inmate showers are located in the housing dayrooms and that showering is allowed during dayroom hours, the only exception being an institutional lockdown. (Ahitow Aff. ¶ 3.) Thus, De La Paz currently has access to daily showers.

was disapproved on the basis that De La Paz did not meet the "established criteria" for transfer to the honor dorm: De La Paz was classified as requiring maximum security, and the dorm was a medium security placement.[7] (Pl.'s Ex. D). The Joliet Institutional Assignment Committee also denied De La Paz's request for transfer, citing his security level and the fact that placement in the dorm was restricted to those inmates who were within twelve years of their projected release date, while De La Paz's release date was eighteen years away. (Pl.'s Exs. C & F.) Defendant Cooper affirmed this decision, signing the form "Keith Cooper, by DAC." (Id.)

De La Paz has sued defendants Howard A. Peters III, Keith Cooper and Dwayne Clark under 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment, alleging they were deliberately indifferent to his serious medical needs. De La Paz also claims that the defendants violated his Fourteenth Amendment right to equal protection by denying his request for honor dorm placement because he is Indian–American/Mexican–American.[8] The defendants seek summary judgment with respect to both claims.

## SUMMARY JUDGMENT STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith" if the evidence submitted shows that "there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The court is to draw all reasonable inferences in favor of the nonmovant, but the non-moving party is required to go beyond the pleadings and designate specific facts showing a genuine issue for trial. Bank Leumi Le–Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). A fact is material when it would determine the outcome of the case under governing law. Whetstine v. Gates Rubber Co., 895 F.2d 388, 392 (7th Cir.1990). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In support of their motion, the defendants have offered the following evidentiary materials: (a) 1987 and 1990 memoranda written by Dr. Howard A. Mueller; (b) medical progress notes from February 20, 1993 to April 20, 1994; (c) affidavit of Alma R. Holm, Health Care Unit Administrator at River; (d) an incomplete copy of De La Paz's Grievance Form requesting transfer to honor dorm or medium security unit; (e) denial of grievance signed "Keith Cooper by DAC"; (f) criteria for honor dorm placement; (g) affidavit of Rodney J. Ahitow, Warden at River; (h) affidavit of Faye Noll, Record Office Supervisor at River; (i) affidavit of Dr. Stephen A. Cullinan, physician at River.

De La Paz responded to the defendants' motion, offering some of the same evidentiary material, and the following additional exhibits: (a) a complete copy of De La Paz's Grievance Form requesting transfer to honor dorm (Pl.'s Ex. D); and (b) his pro se Amended Complaint in this case, since superseded by the current Second Amended Complaint, which identified certain residents of the honor dorm whom De La Paz contends have release dates farther in the future than

---

7. There seems to have been some confusion over whether maximum or medium security was required for De La Paz. While the forms stating the reasons why De La Paz's request was denied (Pl.'s Exs. D & F) state that he required maximum security, an "Institutional Assignment Committee Vote Sheet" used by that committee to record their votes on De La Paz's request indicates that his security level was medium. (Pl.'s Ex. C.)

8. De La Paz's Second Amended Complaint does not actually suggest any racial discrimination claim, although it does refer to the Fourteenth Amendment of the constitution. Instead, De La

Paz raises this claim in his response to the defendants' motion for summary judgment. Pleadings may not be amended by the insertion of new claims in a brief. Harrell v. United States, 13 F.3d 232, 236 (7th Cir.1993). Nevertheless, De La Paz's earlier Amended Complaint did indicate that he claimed racial discrimination in the denial of his request for transfer to the honor dorm, and the defendants have not claimed that they were prejudiced by this improperly raised equal protection claim, and have addressed the claim in their reply brief. We therefore treat it as part of the Second Amended Complaint.

he does, and included allegations about the racial makeup of the dorm (Pl.'s Ex. E). On February 27, 1997, De La Paz also supplemented the response of his court-appointed counsel by filing an affidavit executed by fellow inmate Phillip R. Parker; two IDOC letters dated April 2, 1996 and July 24, 1996, which relate to his treatment for hepatitis at Joliet; disciplinary reports regarding an incident with Dr. Cullinan in January 1997, some of which indicate that Dr. Cullinan's charges against De La Paz were only partially supported; and medical records showing his treatment for hepatitis in 1994 and the recommendation of the Director of Nursing on March 23, 1994, that "this inmate needs to be able to have his clothes laundered more than one time per week due to hygiene problems." (Pl.'s Resp. to Def.'s Reply in Supp. Mot. Summ. Jmt.) All of these materials have been closely examined by this Court in evaluating the pending motion.

## ANALYSIS

The defendants raise the following arguments: (1) defendants Peters and Clark lack the requisite personal involvement for liability under § 1983; (2) De La Paz has failed to establish deliberate indifference to serious medical needs; and (3) De La Paz has no right to, or has not met the placement qualifications for, housing in an honor dorm.

### I. Personal Involvement

The defendants contend that summary judgment should be granted in favor of defendants Peters and Clark for lack of personal involvement. The defendants acknowledge the personal involvement of defendant Cooper, who affirmed decisions made by subordinate personnel relating to the denial of De La Paz's request for admission to the honor dorm. De La Paz points out that Cooper's signature on the relevant forms is marked "by DAC," and states that this mark is an indication that the signature was made by defendant Dwayne Clark, Cooper's assistant. Thus, he claims, both Clark and Cooper were personally involved in his constitutional deprivations. The defendants have not responded to this evidence and argument. Accordingly, we find that Clark and Cooper

were personally involved in the decision to deny De La Paz admission to the honor dorm.

The question of Peters' personal involvement comes out differently. Personal involvement is required for § 1983 liability; the defendant must have "ordered, had knowledge of, or consented to," some violation of the plaintiff's federal or constitutional rights. *Whitford v. Boglino,* 63 F.3d 527, 530–31 (7th Cir.1995); *see also Black v. Lane,* 22 F.3d 1395, 1401 (7th Cir.1994). Peters was the Director of the entire Department of Corrections. There is no indication in the record that Peters was involved in, or even knew of, the alleged deprivations of De La Paz's constitutional rights.

De La Paz argues that defendant Peters has the requisite personal involvement for § 1983 liability simply by virtue of his position as former IDOC Director. He bases his argument on three cases which found personal involvement by prison officials: *Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981); and *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.1981). These cases, however, do not assist De La Paz. The court in *Crowder* did state that "a defendant's direct participation in the deprivation is not required" to prove a § 1983 violation. *Crowder,* 687 F.2d at 1005. Nevertheless, some involvement in the deprivation, such as knowledge, reckless indifference, or authorizing the deprivation, is still necessary. *Id.*

The plaintiff in *Crowder,* an inmate at the Indiana State Reformatory, sued a number of prison officials who allegedly violated his Eighth and Fourteenth Amendment rights. The district court directed a verdict for three defendants on grounds of lack of personal involvement. *Id.* While the Seventh Circuit reversed the district court's dismissal of two defendants who participated directly in the alleged violation, it affirmed the district court's dismissal of the remaining defendant, the prison's Commissioner of Corrections, stating that mere familiarity with the plaintiff's situation could not support a finding of personal involvement. *Id.* at 1005–06. The court continued:

The logical import of this theory ... would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from any constitutional violation occurring at any jail within that Commissioner's jurisdiction.... [S]uch a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action.

*Id.* at 1006. *Crowder* hews to the well established rule that the doctrine of *respondeat superior* does not apply to § 1983 actions, and therefore supervisors cannot be held vicariously liable for the acts of others. *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir.1994).

Turning to *Duncan and Chavis*, those courts only reviewed the sufficiency of the plaintiffs' complaints to determine whether a claim had been stated under § 1983. The courts held that for *purposes of a well pled complaint* the mere level of administrative position may justify the inference that prison officials bear some responsibility for the alleged misconduct.[9] *Duncan*, 644 F.2d at 655; *Chavis*, 643 F.2d at 1290 n. 9. During discovery, however, the plaintiff must develop facts showing a genuine issue for trial as to the personal involvement of the named (or unnamed) officers. *Duncan*, 644 F.2d at 655–56.

With respect to defendant Peters, the Court has concluded that summary judgment is appropriate because De La Paz has not presented any evidence of personal involvement, other than the defendant's mere position as Director of the Illinois Department of Corrections. As stated above, that is not enough to sustain his burden on summary judgment. Summary judgment is hereby entered in favor of defendant Peters on all claims. The Court reviews the remaining arguments as to defendants Cooper and Clark only.

### II. Eighth Amendment Claim

*Serious Medical Need*

■ De La Paz claims a genuine issue of material fact exists regarding whether the defendants were deliberately indifferent to his serious medical needs. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (citation omitted). For liability to exist, however, the first requirement is that the medical need must be "objectively, sufficiently serious," and failure to treat it must constitute the "denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (internal quotation marks and citations omitted).

Here, De La Paz's bowel and urinary incontinence is a severe condition. Dr. Mueller's 1987 and 1990 memoranda as well as the recommendation of the Director of Nursing illustrate that his condition is one requiring medical consideration. Medical records from 1994 and two IDOC letters dated April 2, 1996, and July 24, 1996, which indicate that De La Paz suffered from hepatitis, further illustrate his medical problems. A prison official's failure to attend to De La Paz's condition would violate his duty to maintain medical care—one of the few "humane conditions of confinement." *Id.* at 832, 114 S.Ct. at 1976. Accordingly, the Court concludes that a jury could find that De La Paz has serious medical needs.

*Deliberate Indifference*

■ Even assuming that De La Paz's condition is medically serious, however, his claim survives a summary judgment motion only if a reasonable jury could find that defendants Cooper and Clark exhibited "deliberate indifference" to De La Paz's serious medical needs. *See id.* at 833–34, 114 S.Ct. at 1977 (explaining two-part test for Eighth Amendment liability: first, deprivation must be "sufficiently serious"; second, defendant must have been deliberately indifferent to the deprivation). A prison official named as a defendant must "know[ ] of and disregard[ ]

---

**9.** In addition, the pro se status of the plaintiffs in *Duncan* and *Chavis* required that those courts hold the pleadings to less stringent standards than pleadings prepared with the benefit of legal expertise. *See, e.g., Duncan*, 644 F.2d at 655.

an excessive risk to inmate health or safety" to be considered deliberately indifferent. *Id.* at 837, 114 S.Ct. at 1979.

De La Paz argues that his medical condition requires that the defendants allow him to shower every day of the week. The only evidence he produces in support of his argument are the 1987 and 1990 memoranda from Dr. Mueller. These "stale" memoranda are problematic because they predate De La Paz's stay at Joliet by six and three years respectively. De La Paz essentially asks the Court to impose liability on the defendants merely because years ago one physician recommended he be afforded daily showering privileges.

The defendants knew of De La Paz's serious medical need but cannot be said to have disregarded it. The defendants produced medical progress notes which show that Joliet's medical staff repeatedly considered De La Paz's current medical condition, and made special provisions for him. The medical records from 1994 and IDOC letters from 1996 indicate De La Paz's treatment for hepatitis. In addition, De La Paz was given medical permission to shower two, and on many occasions, three times per week, more frequently than ordinary inmates. Moreover, the defendants produced the affidavit of Dr. Cullinan, which stated that "Mr. De La Paz's condition is not a life threatening condition," nor is it "worsened by only receiving three showers a week." [10]

Rule 56(e) requires the nonmovant to go beyond the pleadings and show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Having had a full and fair opportunity for discovery, De La Paz offers no *contemporaneous* medical testimony to support his claim that daily showers were medically required while he was at Joliet. De La Paz's own disagreement with the defendants' assessment of his medical requirements is insufficient to show that they have been deliberately indifferent

to an excessive risk to his health. The defendants repeatedly considered De La Paz's current condition and gave him special showering privileges, though they may not have been the privileges for which De La Paz wished. De La Paz has not produced any evidence suggesting that the denial of more frequent showers has endangered or caused a deterioration in his health, or any other evidence demonstrating the requisite "deliberate indifference" by defendants Cooper and Clark. The Court cannot conclude that a reasonable jury could find that the defendants have ignored De La Paz's serious medical needs, and therefore grants summary judgment for the defendants on De La Paz's Eighth Amendment claim.

*Qualified Immunity*

■ The defendants are entitled to summary judgment on the Eighth Amendment claim for another reason as well—qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Formigoni*, 42 F.3d 1060, 1064 (7th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The determination of whether a right was clearly established " 'focuses on the state of the law at the time of the alleged violation.'" *Williams v. Anderson*, 959 F.2d 1411, 1414 (7th Cir.1992) (quoting *Zook v. Brown*, 748 F.2d 1161, 1164 (7th Cir.1984)). The Seventh Circuit has determined that one shower a week is constitutionally sufficient for healthy inmates, *Davenport v. DeRobertis*, 844 F.2d 1310, 1316–17 (7th Cir.1988), and we have not found any case holding that inmates with medical conditions such as De La Paz's are constitutionally entitled to more frequent bathing. Here, the defendants went beyond what was constitutionally suffi-

---

**10.** De La Paz insists that, by saying that his medical condition is not life threatening, Dr. Cullinan gave false testimony under penalty of perjury. He supports his claim of perjury with medical records and what he refers to as "false" disciplinary reports written by Dr. Cullinan re-

garding an incident they January 1997. No where in the submitted medical records is there any suggestion that De La Paz's medical problems were life threatening, and his conclusory allegations regarding false reports and testimony do not help him create a genuine issue for trial.

cient for healthy inmates in *Davenport,* and repeatedly extended De La Paz three-times-a-week showering privileges. Therefore, in light of the case law, De La Paz cannot demonstrate that there was a "clearly established" right to shower more frequently than once, much less three times a week. The defendants are entitled to qualified immunity on the Eighth Amendment claim.

### III.  Equal Protection Claim

■ De La Paz claims that a genuine issue of material fact exists regarding whether the decision of defendants Cooper and Clark to deny his request for transfer to the honor dorm was motivated by racial animus. He argues that the defendants, who are African-American, denied his transfer request not because he failed to meet the "established criteria," but because he is Indian–American/Mexican–American. He claims that other inmates who do not square with Joliet's established criteria for dorm placement, such as those with distant release dates, in fact reside in the honor dorm.

De La Paz's allegations adequately state an equal protection claim. "[A]bsent a compelling state interest, racial discrimination in administering prisons violates the Equal Protection Clause of the Fourteenth Amendment." *Black v. Lane,* 824 F.2d 561, 562 (7th Cir.1987) (citing *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974)). However, to survive summary judgment De La Paz must go beyond his pleadings and produce evidence that would permit a rational factfinder to find in his favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "A plaintiff 'must demonstrate intentional or purposeful discrimination' to show an equal protection violation." *Shango v.*

*Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982) (citation omitted).

To support his claim, De La Paz relies on certain passages from page four of his pro se Amended Complaint, which was filed on November 15, 1994 (Pl.'s Ex. E). The complaint alleges that there are close to one hundred beds in the honor dorm, but only two to four inmates with Latin/Hispanic names and no Indian–Americans. The Amended Complaint also lists the names and racial classifications of seventeen inmates who reside in the honor dorm yet fail to meet the established criteria because they have very lengthy sentences. The Amended Complaint is not sworn or verified in any way, and thus generally has no evidentiary value.[11]

In a supplemental response to the defendants' reply brief, De La Paz also submits the affidavit of fellow inmate Philip Parker, dated January 10, 1995.[12] Parker's affidavit is contradictory and confusing. For instance, it first states that housing within the honor dorm is assigned on the basis of the length of the inmates' sentences, with those serving natural life sentences housed in an area called the cubicles, while those with short terms are in open dorm areas, called the easthouse. Parker Aff. ¶ 1. The next paragraph contradicts this, stating in a conclusory fashion that the "nationality/race/creed/color" of an inmate determines the area of the dorm to which he will be assigned. *Id.* ¶ 2. The affidavit does not provide any facts that would support this statement. *See Mills v. First Fed. Sav. & Loan Ass'n,* 83 F.3d 833, 843 (7th Cir.1996) (conclusory allegations in an affidavit cannot defeat a summary judgment motion). The following paragraph, which is perhaps the heart of Parker's testimony, is so poorly stated that we cannot make heads nor tails of it. We quote the paragraph in full:

---

11. The exception to this is De La Paz's list of seventeen dorm residents who are serving lengthy sentences such as natural life. Parker's affidavit specifically avers upon personal knowledge that this list contains "the names of the natural lifers in the Dorm." Parker Aff. ¶ 4.

12. Although the defendants moved to strike this supplemental response brief and the materials attached to it, upon this Court's denial of their motion the defendants did not request an oppor-

tunity to file any additional brief or other materials. Indeed, the defendants have never produced any evidence rebutting De La Paz's claim of discrimination; instead they simply denigrate the quality of the arguments and evidence submitted in support of that claim. The defendants thus elected to risk the possibility that this Court would deem the materials submitted sufficient to withstand their motion for summary judgment.

The races of white and black prisoners are assigned in areas were segregation is of non/disciplinary housing but were and who is housed next to each other, racewise that there were only one latino [Santana] who was in the dorm at that time. [T]he Majority of the prisoners in the dorm are [*natural lifers* ], they hold the best paying assignments, and the best jobs, and have free Access to the Institution.

*Id.* ¶ 3. The sole "evidence" of racial discrimination that we can discern in this paragraph (or in the affidavit as a whole) is the confirmation of De La Paz's earlier allegation that there are very few Mexican–American inmates in the honor dorm. This fact standing alone is insufficient to show that transfers to the honor dorm were biased against persons of De La Paz's race.

■ This Court finds that De La Paz has presented evidence that raises a jury question about the genuineness of the defendants' stated reasons for denying him access to the honor dorm. The defendants' evidence states that they denied his request for transfer because he did not meet "established criteria" in two ways: his security rating, and the distance from his release date. De La Paz has presented evidence that tends to discredit both of these justifications. Unfortunately for De La Paz, however, he still cannot prevail on his equal protection claim, because he has presented no evidence from which a jury could conclude that the real reason the defendants denied him admission to the honor dorm was racial discrimination. De La Paz presents no evidence showing that Mexican–American or Indian–American inmates meeting the established criteria were denied honor dorm placement. He demonstrates nothing more than an isolated and perhaps unfair event, or a mere inconsistency in prison management, that adversely affected him as an individual. This does not in itself establish a violation of the equal protection clause. *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982) (isolated events or mere inconsistency in prison management do not, standing alone, establish an equal protection violation) (citations omitted). The constitution does not afford inmates the right to housing in the setting of their choice. *Meachum v. Fano,* 427 U.S. 215, 224, 96

S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). De La Paz had to do more than establish a reasonable probability that he was the victim of an unfair decision; he had to demonstrate a reasonable likelihood that the defendants had purposefully and intentionally discriminated against him in denying his transfer request. *Shango,* 681 F.2d at 1104.

In the slightly different context of an employment discrimination claim, the Supreme Court has stated that, to win, a plaintiff must show "*both* that the reason [given by the employer] was false, *and* that discrimination was the real reason" for the employer's actions. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). That principle is equally applicable here. It is not enough for De La Paz to suggest that the reason given by the defendants for denying his request was false; he also had to show, or at least produce evidence suggesting, that the real reason for the denial was racial discrimination. This he has failed to do.

De La Paz has not met his burden of coming forward with evidence that would allow a reasonable jury to conclude that his non-assignment to the honor dorm violated his constitutional rights. The Court grants summary judgment in favor of the defendants on De La Paz's equal protection claim.

## CONCLUSION

This Court is sympathetic to Mr. De La Paz's medical problems. Nevertheless, the fact that various prison doctors have disagreed about his need for daily showers does not establish a constitutional violation. "[A] claim ... which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." *DesRosiers v. Moran,* 949 F.2d 15, 20 (1st Cir.1991). The Seventh Circuit has emphasized "if no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment ... then summary judgment must be granted." *Visser v. Packer Engineering Assocs.,* 924 F.2d 655, 660 (7th Cir.1991). This Court

has concluded that the undisputed material facts show that no reasonable jury could return a verdict in favor of De La Paz.

For all of the foregoing reasons, this Court must grant summary judgment in favor of all defendants with respect to all claims presented by De La Paz. This case is hereby dismissed with prejudice. Both sides are to bear their own costs.